UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-60956-KMM

ANIMACCORD LTD.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

    Defendants.
_____/

**REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Plaintiff Animaccord Ltd.'s ("Animaccord") Renewed *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. (ECF No. 23). The matter has been referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida to take all necessary and proper action as required by law with respect to Plaintiff's request for a preliminary injunction. (ECF No. 25). The undersigned held an Evidentiary and Preliminary Injunction Hearing on Plaintiff's Motion on July 10, 2023. Having reviewed the Motion, the docket as a whole, and being otherwise fully advised, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for a preliminary injunction be **GRANTED**.

    **I.**    **BACKGROUND**

On March 13, 2023, Plaintiff filed an Amended Complaint which alleges that Defendants are "promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits

1

and confusingly similar imitations of Animaccord's trademarks and copyrighted works within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites." Plaintiff brings claims for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and federal copyright infringement. Accordingly, Plaintiff invokes this Court's jurisdiction pursuant to 15 U.S.C. § 1121, 17 U.S.C. §§ 101 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367.

On June 23, 2023, the district court granted Plaintiff's request for a temporary restraining order ("TRO"). In doing so, the district court summarized the relevant fact as detailed below. These facts remain uncontested as Defendants have not appeared in this case and did not appear before the undersigned at the Evidentiary and Preliminary Injunction Hearing.

Plaintiff is the owner of certain federally registered trademarks and copyrights associated with "Masha and the Bear," an internationally famous children's television series. This case concerns four of Plaintiff's trademarks[1] and eleven of Plaintiff's copyrights.[2]

Defendants are unknown individuals, business entities, or unincorporated associations who use, or assist others in using, commercial internet websites and e-commerce stores operating under certain eBay seller names set forth in Schedule "A" attached to the district court's TRO (hereinafter "Seller ID's"). Plaintiff contends that Defendants either reside in or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, or ship their goods from

---

[1] Plaintiff's trademarks are as follows: Trademark No. 4,790,906, registered on August 11, 2015; Trademark No. 4,790,909, registered on September 11, 2015; Trademark No. 5,420,550, registered on March 13, 2018; and Trademark No. 4,800,025, registered on August 25, 2015. (ECF No. 23-1 at 7–14).

[2] Plaintiff's copyrights are as follows: Copyright No. VA 1-835-610, registered on Aug. 21, 2012; Copyright No. PA 1-813-099, registered on July 12, 2012; Copyright No. PA 1-813-100, registered on July 12, 2012; Copyright No. PA 1-813-101, registered on July 12, 2012; Copyright No. PA 1-813-102, registered on July 12, 2012; Copyright No. PA 1-813-103, registered on July 12, 2012; Copyright No. TX 8-552-180, registered on December 27, 2017; Copyright No. TX 8-537-380, registered on December 27, 2017; Copyright No. TX 8-588-442, registered on August 14, 2017; Copyright No. TX 8-431-770, registered on June 23, 2017; Copyright No. TX 8-444-776, registered on August 7, 2017. (ECF No. 23-1 at 15).

the same or similar locations to shipping and fulfillment centers within the United States from those locations. According to Plaintiff, Defendants are the "past and present controlling forces" behind the sale of the counterfeit and infringing products, and use aliases, including those listed in Schedule "A," in conjunction with the operation of their businesses.

Plaintiff alleges that Defendants—knowingly and intentionally, and without Plaintiff's consent or authorization—promote and otherwise advertise, distribute, sell or offer for sale, through their respective Seller ID's, nongenuine goods of a substantially different quality from Plaintiff's genuine goods, bearing or using counterfeit or confusingly similar infringing imitations of Plaintiff's trademarks and copyrights.

According to Plaintiff, Defendants engage in their infringing and counterfeiting activities through the operation of internet-based ecommerce stores. Specifically, Plaintiff claims that Defendants use its trademarks to attract and direct online customers to Defendants' websites and e-commerce stores where they conduct this infringing activity. Plaintiff claims that Defendants sell their counterfeit goods with the knowledge and intent that these goods will be mistaken for Plaintiff's genuine goods, despite Defendants' knowledge that they are not authorized to do so.

Plaintiff contends that Defendants are properly deemed as acting in concert because they "are selling identical plush bear and accompanying doll sets incorporating the Masha and The Bear Marks and Copyrighted Works with identical product descriptions and photographs." Accordingly, Plaintiff avers that "Defendant are the same person, related persons, or acting in concert with one another such as utilizing the same fraudulent marketing material and/or obtaining the counterfeit product from a common source." As Defendants are likely to transfer or secret their assets to avoid payment of a monetary judgment, should the Court enter one, Plaintiff claims that it has no adequate remedy at law, is suffering irreparable injury, and has suffered substantial damages from

Defendant's misuse of Plaintiff's trademarks and copyrights. Accordingly, Plaintiff seeks wide-ranging injunctive relief.

Plaintiff further avers that it hired a third-party investigator "to access Defendants' Internet based e-commerce stores operating under each of the Seller IDs." (ECF No. 23-2 ¶ 5). That investigator "initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of, at least one of the Masha and The Bear Marks or Copyrighted Works, and requested each product to be shipped to an address in the Southern District of Florida." Based on this information, Plaintiff avers that "Defendants' goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States."

On June 23, 2023, the district court entered an Order granting Plaintiff's request for a TRO, temporarily restraining Defendants from infringing Plaintiff's trademarks and copyrighted works at issue. Pursuant to the district court's Order, Plaintiff properly served Defendants with a copy of the Amended Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, the Court's TRO, the Sealed Order setting hearing on Plaintiff's Motion for Preliminary Injunction, and all other pleadings and orders issued in this action, thereby providing notice and copies of all documents on file in this action. (ECF No. 32).

By the instant Motion, Plaintiffs move for the entry of a preliminary injunction against Defendants, who are the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" and an order restraining financial accounts used by Defendants, pursuant to 15 U.S.C § 1116, Federal Rules of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The undersigned held an Evidentiary and Preliminary Injunction Hearing on July 10, 2023, which was attended only by Plaintiff's counsel.[3] During the hearing, Plaintiff represented that the evidence to support the request for the preliminary injunction was the same evidence submitted in support of the TRO. As Defendants did not appear, Plaintiff's evidence is uncontroverted. Defendants have not responded to the Motion for Preliminary Injunction, nor have they made any appearance or filing in this case, either individually or through counsel.

Because Plaintiff has adduced sufficient evidence to demonstrate entitlement to a preliminary injunction and such evidence is unrebutted, the Court recommends that the Motion for Preliminary Injunction be granted.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to enter a preliminary injunction. Fed. R. Civ. P. 65. The issuance of a preliminary injunction is an extraordinary remedy that should not be granted absent a clear showing that the movant has met its burden of proof. *Cafe 207 v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993). To prevail on a motion for a preliminary injunction, a plaintiff must establish that: (1) there is a substantial likelihood of success on the merits of the plaintiff's claims; (2) the plaintiff will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant if injunctive relief is granted; and (4) granting the injunction would not be adverse to the public interest. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). A plaintiff "must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms" a plaintiff's request. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

---

[3] Plaintiff's counsel at the hearing represented that some Defendants without counsel had contacted Plaintiff directly, but Plaintiff's counsel represented that no attorney has contacted Plaintiff regarding this matter to date.

The preliminary injunction is a device designed to prevent irreparable harm and "preserve the district court's power to render a meaningful decision after a trial on the merits." *Niko Petroleum Retailers of Fla., LLC v. Miami VIP Tours LLC*, No. 14-21770-CIV, 2014 WL 12862297, at *4 (S.D. Fla. May 29, 2014) (citing *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). "The most compelling reason in favor of granting a preliminary injunction is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id*. "A preliminary injunction is meant to keep the status quo for a merits decision." *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290 (11th Cir. 2022).

### III.  DISCUSSION

Plaintiff has demonstrated a substantial likelihood of success on the merits. To prevail on a claim for trademark infringement, Plaintiff must show: (1) it has trademark rights in certain trademarks; (2) Defendants' use of its trademarks is without authorization; and (3) that Defendants' use of its trademarks is likely to cause confusion, mistake, or deception. *See* 15 U.S.C. § 1114(1); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1130–31 (11th Cir. 2018); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J. concurring) (noting that federal courts are "in agreement that the test for liability is likelihood of confusion: . . . 'Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical— is there a likelihood of confusion?'") (quoting *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."). Here, Plaintiff has shown ownership of its trademark rights in certain trademarks. *See generally* (ECF No. 23-1); *see also* (ECF No. 1-1). Further, Defendants do not have authorization to use Plaintiff's trademarks. *See*

(ECF No. 23-2 ¶¶ 4–6). The evidence before the Court strongly suggests that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of products bearing counterfeits, reproductions, or colorable imitations of Plaintiff's trademarks. Plaintiff's evidence suggests that the products Defendants are selling and promoting are copies of Plaintiff's products that bear copies of Plaintiff's trademarks. *See* (ECF No. 23-1 ¶¶ 14–18); (ECF No. 23-2 ¶¶ 4–6).

Second, Plaintiff is likely to suffer immediate and irreparable injury in the absence of a preliminary injunction. "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) (alteration in original) (citation omitted). Based on the evidence before the Court, there is a strong showing of a likelihood of confusion caused by Defendants' trademark infringement. Specifically, Defendants are advertising, offering to sell, and selling counterfeit goods bearing Plaintiff's trademarks, as well as goods which are clearly intended to mimic Plaintiff's trademarks. (ECF No. 23-2 ¶ 4); (ECF No. 23-1 ¶¶ 19–22).[4] Accordingly, the Court finds that there is a sufficiently strong showing that consumers may believe they are viewing or purchasing genuine goods sold or authorized by Plaintiff. Further, the Court finds that there is good cause to believe that consumers may be misled, confused, or disappointed by the quality of these products, and that Plaintiff may suffer reputational harm as a result.

Third, the threatened injury to Plaintiff outweighs the potential harm to Defendants. Plaintiff avers that it has expended substantial time, money, and resources to develop the alleged

---

[4] (ECF No. 23-1 ¶ 21) ("Defendants are obliterating the otherwise open and available marketplace space in which Animaccord has the right to fairly market its goods and associated message. Specifically, many Defendant[s] use unauthorized counterfeits of the Masha and The Bear Marks and Copyrighted Works in order to make their e-commerce stores appear more relevant and attractive to consumers searching for Animaccord's related goods.").

quality, reputation, and goodwill associated with its trademarks. *See* (ECF No. 23-1 ¶¶ 6–9, 12–14). Defendants suffer no legitimate hardship because Defendants are not authorized to engage in their allegedly infringing activities. Therefore, the potential harm to Plaintiff's reputation and goodwill as owner of the infringed-upon trademarks outweighs the potential harm to Defendants of restraining Defendants' trade in counterfeit goods bearing those marks.

Fourth, Plaintiff argues that "[t]he public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products." (ECF No. 23 at 14–15) (citing *Nailtiques Cosmetic Corp. v. Salon Scis., Corp.*, No. 96-2709-CIV, 1997 WL 244746, at *5 (S.D. Fla. Jan. 10, 1997)). This Court agrees. *See Heron Dev. Corp. v. Vacation Tours, Inc.,* No. 16-cv-20683, 2017 WL 2895921, at *9 (S.D. Fla. Apr. 13, 2017), *report and recommendation adopted*, No. 16-20683-CIV, 2017 WL 2901203 (S.D. Fla. May 26, 2017) (citation omitted).

In addition, Plaintiff requests that the Court enter an order limiting the transfer of Defendants' unlawfully gained assets. (ECF No. 23 at 16). Specifically, Plaintiff requests that the Court enter an order restraining the transfer of all monies transmitted through PayPal or any other financial institution for the benefit of any one or more of Defendants, and any other financial accounts tied thereto. (*Id*. at 16–19). Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, illegal profits gained through Defendants' distribution and sale of products bearing counterfeits or infringing upon Plaintiff's trademarks. *See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset restraint, in order to assure the availability of permanent relief." *Id*. (citation omitted). Moreover, asset restraints can be particularly important where counterfeiters conduct their business entirely online and may be practically able to thwart adequate relief by transferring assets

out of the reach of the plaintiff. Accordingly, the Court finds that there is good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

### IV. RECOMMENDATIONS

Accordingly, it is **RECOMMENEDED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 23) be **GRANTED** and a Preliminary Injunction be entered as follows:

1. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are hereby restrained and enjoined until further Order of the Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Masha and The Bear Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Masha and The Bear Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Masha and The Bear Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

    c. From using any reproduction, counterfeit, copy, or colorable imitation of the Masha and The Bear Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

2. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Masha and The Bear Marks, confusingly similar trademarks, or unauthorized copies of the Copyrighted Works on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

3. Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

4. Upon receipt of notice of this Order, the Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, eBay and PayPal, and their related companies and affiliates (collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order to the extent not already done,

    a. Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related

financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

    b. Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A," as well as any other accounts of the same customer(s); (ii) the identity and location of the Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

5. Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

6. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

7. This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting

and infringing the Mash and The Bear Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiff.

8. This Order shall not apply to any Defendant or associated domain name or e-commerce store dismissed from this case or as to which Plaintiff has withdrawn its request for a preliminary injunction;

9. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of this Court.  In the Court's discretion, the bond may be subject to increase should the amount of funds seized exceed $10,000.00.

10. In addition, to provide further notice of this proceeding, the Plaintiff shall serve copies of this Report and Recommendations on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Report and Recommendations by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Report and Recommendations, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, the Plaintiff shall post copies of the Report and Recommendations, as well as all other documents filed in this action, on the website located at https://www.dropbox.com/sh/3bvgjubo9e3kgnj/AACA7hMzZfXJkJRIhYtcsHnda?dl=0 and shall provide the address to the website to the Defendants via e-mail/online contact

form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at https://www.dropbox.com/sh/3bvgjubo9e3kgnj/AACA7hMzZfXJkJRIhYtcsHnda?dl=0, or by other means reasonably calculated to give notice which is permitted by the Court.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 13th day or July, 2023.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE